1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7   DANIELLE LEE and BEN LEE,

8                         Plaintiffs,        NO:  12-CV-0080-TOR

9        v.                                  ORDER GRANTING DEFENDANT'S
                                             MOTON FOR PARTIAL SUMMARY
                                             JUDGMENT
10  RITE AID CORPORATION and
    THRIFTY PAYLESS, INC.,
11
                          Defendants.
12

13       BEFORE THE COURT is Defendants' Motion for Summary Judgment on

14  Plaintiffs' Claims for Wrongful Termination (ECF No. 32).  This matter was heard

15  without oral argument on December 28, 2012.  The Court has reviewed the motion,

16  the response, and the reply, and is fully informed.

17                         BACKGROUND

18       Plaintiff has sued her former employer for wrongful discharge in violation of

19  public policy.  Defendant has moved for summary judgment on two separate

20  grounds.  First, Defendant argues that Plaintiff cannot establish that she was

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 1

1  constructively discharged on the undisputed facts presented.  Second, Defendant

2  asserts that Plaintiff cannot prove the "jeopardy" element of her wrongful

3  discharge claim because the Washington Law Against Discrimination ("WLAD")

4  adequately protects the public policy against pregnancy-related discrimination.

5  For the reasons discussed below, the motion will be granted.

6                                    FACTS

7       Plaintiff Danielle Lee ("Plaintiff") began working for Defendant Rite Aid

8  Corporation ("Rite Aid") in 2007 as a pharmacy intern.[1]  After graduating from

9  pharmacy school, Plaintiff was offered a position as a pharmacist at Rite Aid's

10  Franklin Park store in Spokane, Washington.  The terms of the offer provided that

11  Plaintiff would be permanently assigned to the Franklin Park store as a full-time

12  management employee.  ECF No. 41-4 at 6.  Plaintiff accepted the offer on June 5,

13  2008.  ECF No. 41-4 at 6.  She began work on June 16, 2008.  ECF No. 41-4 at 6.

14       In August 2008, Plaintiff became pregnant.  Later that month, Plaintiff

15  began to experience medical difficulties with her pregnancy.  On the advice of her

16  doctors, Plaintiff advised Rite Aid that she would need to reduce her work hours to

17  no longer than 10 hours per shift.  ECF No. 34 at ¶ 3; ECF No. 45 at ¶ 1.3.  As her

18  pregnancy progressed, Plaintiff's medical difficulties worsened.  This prompted

19  Plaintiff to further restrict her work schedule by requesting even shorter shifts and

20  _____

[1] Defendant Rite Aid Corp. and Defendant Thrifty Payless, Inc. are the same entity.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 2

taking fewer shifts per week.  On March 2, 2009, as her due date approached,

Plaintiff took a three-month medical leave of absence.  ECF No. 45 at ¶ 2.19.  She

subsequently delivered her child on April 7, 2009.

Plaintiff returned from medical leave on June 10, 2009.  ECF No. 34 at ¶ 5;

ECF No. 45 at ¶ 2.21.  One week later, Rite Aid began periodically assigning

Plaintiff to cover shifts at locations other than the Franklin Park store.  Rite Aid's

attendance records indicate that, from June 4, 2009 to August 13, 2009, Plaintiff

was assigned to shifts at other locations on 10 out of 29 total workdays.  ECF No.

50 at 8.  Throughout this period, Plaintiff requested several days off for both

personal and ongoing pregnancy-related reasons.  ECF No. 34 at ¶¶ 6-8; ECF No.

45 at ¶ 2.23.

In mid-August 2009, Rite Aid changed the business hours of the Franklin

Park store from being open 24-hours a day, seven days per week, to being open

only from 8:00 a.m. to midnight each day.  ECF No. 34 at ¶ 10; ECF No. 45 at

¶ 1.10.  This scheduling change reduced the number of shifts and work hours

available to pharmacists assigned to the Franklin Park store.  Krimmer Decl., ECF

No. 37, at ¶ 13.  Shortly thereafter, Plaintiff was formally assigned to Rite Aid's

"float team," meaning that her work location would vary from shift to shift

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 3

according to the needs of individual stores in the eastern Washington region.[2]  The

reasons for this transfer are sharply disputed.  Rite Aid asserts that the change was

designed to more easily accommodate Plaintiff's frequent requests for medical and

personal leave (*see* ECF No. 34 at ¶¶ 11-14).  Plaintiff insists that she was

transferred in "retaliation" for having requested frequent medical leave due to her

pregnancy.  Lee Dep., ECF No. 38-2, at Tr. 288.

Within two weeks of being assigned to the float team, Plaintiff informed

Rite Aid that she was unwilling to travel to stores located outside of Spokane.

ECF No. 38-2 at 36-37.  Plaintiff's reasons for limiting her travel are disputed.

Plaintiff asserts that she was unwilling to make lengthy commutes from Spokane to

places like the Tri-Cities and Moses Lake because she "had a brand new baby at

home."  Lee Dep., ECF No. 38-1, at Tr. 141.  Rite Aid maintains that Plaintiff

simply "did not like driving outside Spokane."  ECF No. 46 at 2; Lee Dep., ECF

No. 38-2, at Tr. 167.  In addition, Plaintiff informed Rite Aid that she preferred not

to work on Sundays for religious reasons.  ECF No. 38-2 at 36-37; Lee Dep., ECF

No. 38-2, at Tr. 164-65.

---

[2] Pharmacists on the float team are paid the same as pharmacists assigned to an individual store and are also compensated for time spent traveling to and from stores outside of Spokane.  Krimmer Decl., ECF No. 37, at ¶ 7.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 4

Plaintiff worked on the float team during the months of August, September and October 2009.  During this time, Plaintiff was unable to obtain enough scheduled work hours—an average of 35 hours per week—to be considered a full-time employee.  ECF No. 34 at ¶ 17; ECF No. 45 at ¶ 1.17.  As a result, Plaintiff became ineligible to receive health insurance benefits offered by her employer.  ECF No. 45 at ¶ 2.28.  She also experienced a reduction in her monthly income due to the fact that she was working fewer hours.  Finding these circumstances to be unacceptable, Plaintiff resigned her employment at the end of October 2009.  Lee Dep., ECF No. 41-3, at Tr. 216-17.

In an attempt to convince Plaintiff to change her mind, Rite Aid offered Plaintiff an assignment as a "pharmacist in charge" of its store on the South Hill in Spokane.  Krimmer Decl., ECF No. 37, at ¶ 20.  By Rite Aid's account, this assignment was a "trial period."  In its view, if Plaintiff wanted to keep the position, she would need to "commit to working a regular rotating schedule that included working every other weekend (including Sundays), working every other holiday, and not constantly seeking to have her work schedule changed to fit her personal desires for time off."  Krimmer Decl., ECF No. 37, at ¶¶ 19-20.

Plaintiff understood the offer somewhat differently.  In her view, the offer was simply made with the caveat that she could not take as much "time off."  Lee Dep., ECF No. 38-2, at Tr. 313.  Plaintiff interpreted this to mean that Rite Aid

1    "didn't want to deal with [her] missing work" for medical reasons.  Lee Dep., ECF

2    No. 38-2, at Tr. 313-14.  Apparently willing to accept these terms, Plaintiff began

3    working as a full-time pharmacist at the South Hill store on November 1, 2009.

4    ECF No. 34 at ¶ 21.

5        Over the next two months, Plaintiff requested a number of scheduling

6    accommodations for both medical and personal reasons.  Rite Aid contends that the

7    majority of these requests were personal in nature, such as attending a funeral,

8    taking time off for the Christmas holiday, and participating in a church function.

9    ECF No. 34 at ¶¶ 22, 24, 26-27.  It further alleges that Plaintiff made unilateral

10   changes to her assigned shifts without consulting the other full-time pharmacist

11   assigned to the store.  ECF No. 34 at ¶¶ 22-24, 27.

12       Plaintiff, for her part, insists that the majority of her requests for time off

13   during this two-month period were medical in nature.  While she acknowledges

14   taking time off for the personal reasons above, she maintains that most of her leave

15   was taken to care for a back injury (purportedly caused by the weakening of her

16   abdominal muscles during pregnancy) and to take her infant son to various

17   doctor's appointments.  ECF No. 45 at ¶¶ 1.25, 2.37.  Plaintiff further denies

18   unilaterally changing the store's work schedule, explaining that she did in fact

19   consult with the other pharmacist before making any changes.  ECF No. 45 at ¶

20   1.22-1.24, 1.27.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 6

Clearly dissatisfied with Plaintiff's attendance record in her new position, Rite Aid re-assigned Plaintiff to the float team on December 29, 2009.  Rite Aid contends that it offered Plaintiff one final opportunity to conform to its scheduling expectations before making this change; Plaintiff insists that she was given no choice but to return to the float team.  ECF No. 34 at ¶ 29; ECF No. 45 at ¶ 1.29.  Believing that she "could not afford financially, physically, or emotionally to work the floater position," Plaintiff resigned her employment the following day.  ECF No. 45 at ¶ 1.29.  This lawsuit followed.

DISCUSSION

A court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" within the meaning of Rule 56(a) if it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A "genuine dispute" over any such fact exists only where there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party.  *Id.* at 248.

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party has the burden of

proof at trial, the moving party need only demonstrate an absence of evidence to support the non-moving party's claims. *Id.* at 325. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In deciding whether this standard has been satisfied, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 327, 378 (2007).

**A. Constructive Discharge**

Rite Aid has moved for summary judgment on Plaintiff's "claim" for constructive discharge. ECF No. 35 at 2. However, Plaintiff has not asserted a separate cause of action for constructive discharge; rather, Plaintiff has asserted a cause of action for wrongful discharge in violation of public policy on a constructive discharge *theory*. *See Wahl v. Dash Point Family Dental Clinic, Inc.*, 144 Wash. App. 34, 43 (2008) ("A cause of action for wrongful discharge in violation of public policy may be based on either express or constructive discharge.") (internal quotation marks omitted). In other words, Plaintiff has pled constructive discharge in order to establish the "termination" element of her wrongful discharge claim.

"Washington cases generally describe constructive discharge as involving deliberate acts by the employer that create intolerable conditions, thus forcing the

employee to quit or resign." *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wash.2d 168, 179  (2005).  To prove constructive discharge, an employee must show (1) that the employer engaged in deliberate conduct which made the employee's working conditions intolerable; (2) that a reasonable person in the employee's position would be forced to resign; (3) that the employee resigned solely because of the intolerable conditions; and (4) that the employee suffered damages. *Allstot v. Edwards*, 116 Wash. App. 424, 433 (2003); *Short v. Battle Ground Sch. Dist.*, 169 Wash. App. 188, 206 (2012).

An employee may demonstrate intolerable working conditions by showing that he or she was subjected to "aggravating circumstances or a continuous pattern of discriminatory treatment" on the part of the employer. *Allstot*, 116 Wash. App. at 433.  This is an objective standard.  As such, the relevant question is whether a reasonable person, when confronted with the circumstances facing that particular employee, would have felt compelled to resign. *See Washington v. Boeing Co.*, 105 Wash. App. 1, 15-16 (2000) ("The inquiry is whether working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.").  Similarly, the employer's subjective intent to create intolerable working conditions is irrelevant; the pertinent inquiry is whether the employer engaged in an intentional act which had the *effect* of making the employee's working conditions intolerable. *See Wahl*,

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 9

144 Wash. App. at 44 (2008) ("It is the act, not the result, which must be deliberate.").  "Whether working conditions are intolerable is a question of fact [which] is not subject to summary judgment unless there is no competent evidence to establish the claim." *Allstot*, 116 Wash. App. at 433.

Further, courts applying Washington law must "presume [the employee's] resignation is voluntary and, thus, cannot give rise to a claim for constructive discharge." *Townsend v. Walla Walla Sch. Dist.*, 147 Wash. App. 620, 627 (2008). The employee may rebut this presumption "by showing the resignation was prompted by duress or an employer's oppressive actions." *Townsend*, 147 Wash. App. at 627-28.  Duress, like the intolerability of working conditions, is measured objectively rather than subjectively.  Accordingly, the employee's mere subjective dissatisfaction with the employer's actions is insufficient to overcome the presumption. *Townsend*, 147 Wash. App. at 628.

Here, Rite Aid has advanced two alternative rationales for granting summary judgment on Plaintiff's constructive discharge theory.  First, it argues that Plaintiff cannot overcome the presumption that her resignation was voluntary.  Second, it asserts that Plaintiff's working conditions were not so objectively "intolerable" as to effectively force her to resign.  Plaintiff opposes summary judgment on the ground that these determinations should be made by the trier of fact.

1    Construing the facts in the light most favorable to Plaintiff, the Court finds

2    that Plaintiff has successfully overcome the presumption that her resignation was

3    voluntary.  Contrary to Rite Aid's assertions, Plaintiff did not resign simply

4    because she was subjectively dissatisfied with being reassigned to the float team.

5    Rather, the evidence strongly suggests that Plaintiff resigned primarily because she

6    would not have been able to work full-time hours if she were returned to the float

7    team.  This circumstance equates to resigning under "duress," which is sufficient to

8    overcome the voluntary resignation presumption.  *Townsend*, 147 Wash. App. at

9    627-28.

10    Similarly, the Court finds that Plaintiff has presented sufficient evidence to

11    avoid summary judgment on the issue of intolerable working conditions.  As noted

12    above, intolerable working conditions can arise from either "aggravating

13    circumstances or a continuous pattern of discriminatory treatment" on the part of

14    the employer.  *Allstot*, 116 Wash. App. at 433.  Rite Aid does not dispute that

15    Plaintiff was assigned to the float team shortly after returning from maternity

16    leave.  While working on the float team from mid-August to mid-October 2009,

17    Plaintiff was unable to obtain enough scheduled hours to be considered a full-time

18    employee.  ECF No. 46 at 3.  Although the root cause of this circumstance is

19    sharply disputed, it is undisputed that Plaintiff's inability to work full-time hours

20    was the driving force behind her first resignation in late October 2009.  This

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 11

1  resignation effectively put Rite Aid on notice that Plaintiff could not tolerate

2  working on the float team.

3         Nevertheless, Rite Aid transferred Plaintiff to the float team for a second

4  time in late December 2009.  The record supports competing inferences as to

5  whether this transfer was discriminatory.  Regardless of Rite Aid's subjective

6  motivation, however, the fact remains that it transferred Plaintiff *back* to the float

7  team a mere two months after Plaintiff resigned from that very same assignment.

8  A rational jury could find that this qualifies as an "aggravating circumstance" for

9  purposes of establishing intolerable working conditions.  *See Allstot*, 116 Wash.

10  App. at 433.

11         A rational jury could also find that Rite Aid engaged in a "continuous

12  pattern of discriminatory treatment."  *See Allstot*, 116 Wash. App. at 433.  When

13  viewed in the light most favorable to Plaintiff, the evidence suggests that Rite Aid

14  was wary of keeping a new mother, who was still struggling with pregnancy-

15  related medical problems, assigned to a single-store position.  Indeed, Rite Aid has

16  conceded that being assigned to a single-store position requires a pharmacist to

17  adhere to a set, predictable schedule—and that it did not believe Plaintiff could

18  satisfy this requirement.  *See* Krimmer Decl., ECF No. 37, at ¶¶ 4, 14-16, 26, 29.

19  When the evidence is viewed in this context, the only remaining question is to

20  what extent Plaintiff's medical, as opposed to personal, leave caused Rite Aid to

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 12

1  conclude that Plaintiff was incapable of fulfilling the duties of a single-store

2  pharmacist.  This is a question that can only be answered by the trier of fact.

3  Accordingly, Rite Aid is not entitled to summary judgment on the constructive

4  discharge component of Plaintiff's wrongful discharge claim.

5  **B. Claim for Wrongful Discharge in Violation of Public Policy**

6         To prevail on a common law claim for wrongful discharge in violation of

7  public policy, a plaintiff must prove the following four elements: "(1) the existence

8  of a clear public policy (the *clarity* element); (2) that discouraging the conduct in

9  which he engaged would jeopardize the public policy (the *jeopardy* element); (3)

10  that the public-policy-linked conduct caused the dismissal (the *causation* element);

11  and, finally, (4) that the defendant has not offered an overriding justification for the

12  dismissal (the *absence of justification* element)."  *Cudney v. ALSCO, Inc.*, 172

13  Wash.2d 524, 529 (2011) (emphasis in original) (internal quotations, citations and

14  modifications omitted).

15         The jeopardy element is the only element now at issue.  To satisfy this

16  element, a plaintiff must make a threshold showing "that other means of promoting

17  the public policy are inadequate."  *Id.* at 530 (internal quotations and citations

18  omitted).  Where, as here, the existence of a clear public policy (*i.e.*, the clarity

19  element) is undisputed, a court should generally decide this issue as a matter of

20  law.  *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wash.2d 168, 182 (2005)

(jeopardy analysis presents a pure question of law "where the inquiry is limited to examining existing laws to determine whether they provide adequate alternative means of promoting the public policy"); *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wash.2d 200, 232 (2008) (Madsen, J., concurring in relevant part) (when a statute creates a "clear mandate of public policy" in the employment context, the relevant jeopardy analysis is simply "whether the remedies provided by the legislature adequately protect the public policy"). Thus, if a court concludes that the public policy at issue is adequately protected by a statutory remedy, a plaintiff's wrongful discharge claim will fail as a matter of law. *Cudney*, 172 Wash.2d at 530; *Korslund*, 156 Wash.2d at 181.

In this case, the parties agree that Washington has a clear public policy condemning workplace discrimination against women due to pregnancy and pregnancy-related issues. ECF No. 39 at 23. The parties disagree, however, about whether this public policy is adequately protected by existing statutory remedies. As discussed below, the Court concludes that the public policy at issue is adequately protected by statute.

1. The WFLA, WLAD and FMLA Adequately Protect the Public Policy Against Pregnancy-Related Discrimination in the Workplace

In Washington, the Family Leave Act ("WFLA"), RCW 49.78.010 *et seq.*, provides employment security to mothers who take leave for pregnancy-related reasons. It requires, *inter alia*, that such employees be returned to their former

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 14

position (or an equivalent position) with the same level of employment benefits, *see* RCW 49.78.280, and that employers refrain from discharging or otherwise discriminating against such employees for taking pregnancy-related leave.  *See* RCW 49.78.300.  Employers who violate the statute are subject to a civil penalty of $1,000 per violation, *see* RCW 49.78.320, and may also be sued directly by the injured employee for damages, attorney's fees and costs.  *See* RCW 49.78.330.

The Washington Law Against Discrimination ("WLAD"), RCW 49.60.010 *et seq.*, as well as its implementing regulations, offer similar protections.  Under the WLAD and WAC 162-30-020, for example, it is illegal for an employer to terminate, demote, or refuse to promote a woman due to pregnancy or childbirth or to discriminate against such an employee in awarding sickness or disability leave.  Employers who violate these laws may be investigated by the Washington State Human Rights Commission, *see* RCW 49.60.240, and may be sued directly by the injured employee for damages, attorney's fees and costs.  *See* RCW 49.60.030(2).

At the federal level, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, exists, in relevant part, "to entitle employees to take reasonable leave . . . for the birth or adoption of a child," and to "minimize[] the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons (including maternity-related disability)."  29 U.S.C. § 2601(b)(2), (4).  To that end, the FMLA grants eligible employees up to 3

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 15

months of leave during any 12-month period to care for a newborn baby and to

recover from a serious health condition.  29 U.S.C. § 2612(a)(1)(A), (D).  The

statute further requires that an employee be restored to his or her former position

(or an equivalent position) with the same level of employment benefits upon

returning from medical leave.  29 U.S.C. § 2614(a)(1), (2).  Finally, the FMLA

prohibits employers from interfering with or discriminating against employees who

exercise their rights to take medical leave.  29 U.S.C. § 2615(a).  Employers who

violate these provisions may be sued directly by the injured employee for damages,

attorney's fees and costs.  29 U.S.C. § 2617(a).

      The Court finds that the WFLA, WLAD and FMLA adequately protect the

public policy against pregnancy-related discrimination by employers.  As Plaintiff

herself acknowledges, these statutes "provid[e] reasonable leave for medical

reasons, such as pregnancy and pregnancy-related issues," and "prohibit

discrimination against pregnant women."  ECF No. 39 at 23, 26.  Plaintiff further

acknowledges that these statutes contain robust enforcement schemes which serve

to protect their underlying public policy objectives.  ECF No. 39 at 22-24.  The

Court concurs with this assessment, and concludes that the WFLA, WLAD and

FMLA are adequate to protect the public policy against pregnancy-related

discrimination in the workplace.  Accordingly, Plaintiff's common law wrongful

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 16

1    discharge claim is barred.  *See Cudney*, 172 Wash.2d at 530; *Korslund*, 156

2    Wash.2d at 182.

3        2.  *Roberts v. Dudley*

4        Plaintiff relies heavily upon the Washington Supreme Court's decision in

5    *Roberts v. Dudley*, 140 Wash.2d 58 (2000), for the proposition that she may bring

6    a common law wrongful discharge claim *despite* the fact that the WFLA, WLAD

7    and FMLA adequately protect the public policy upon which she relies.  In *Roberts*,

8    a woman sued her former employer for wrongful discharge after being fired while

9    on maternity leave.  Despite the fact that her employer was statutorily exempt from

10    the WLAD by virtue of its small size (*i.e.*, fewer than eight employees), the

11    plaintiff attempted to rely upon the WLAD's prohibition against sex discrimination

12    to satisfy the "clear public policy" element of her claim.  140 Wash.2d at 61.  The

13    trial court dismissed the lawsuit, ruling that the plaintiff could not rely upon the

14    WLAD to establish a clear public policy given that her employer was not subject to

15    the WLAD's regulations.  *Id.*

16        The Washington Supreme Court subsequently reversed.  In reaching this

17    decision, the *Roberts* Court held that the public policies articulated in the WLAD

18    apply to *all* employers—regardless of whether they can be sued under the WLAD

19    itself:

20        [The WLAD's statement of purpose] clearly condemns employment
        discrimination as a matter of public policy.  Nothing in [the WLAD]

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 17

1     suggests small employers are exempt from such a policy; to the
2     contrary, RCW 49.60.010 sets forth a policy that discrimination
      against *any* citizens should be eradicated.

3  *Id.* at 69-70 (emphasis in original).  Consistent with this reasoning, the *Roberts*

4  Court concluded that the WLAD "provides an abundantly clear statement of public

5  policy upon which a common law cause of action for wrongful discharge may be

6  predicated."  *Id.* at 77.

7           *a.  Applicability to Potential WFLA- and FMLA-Based Claims*

8           Plaintiff argues that *Roberts* authorizes her to pursue a common law

9  wrongful discharge claim based upon the public policies in the WFLA and FMLA

10 given that she lacks a remedy under either of these statutes.[3]  *See, e.g.*, ECF No. 39

11 at 23 ("Mrs. Lee cannot take advantage of the protections provided by the FMLA

12 and WFLA.  However, as indicated in *Roberts*, Mrs. Lee may pursue a claim for

13 _____

14 [3] Plaintiff concedes that her wrongful discharge claim "does not fit within the

15 limitations of the WLAD, FMLA or WFLA because she did not meet the required

16 number of hours worked in the year prior to the accrual of her claim."  ECF No. 39

17 at 22.  This concession appears to be in error as to a WLAD claim, as the WLAD

18 does not require an employee to have worked a certain number of hours in order to

19 qualify for its protections.  Indeed, Plaintiff is actively pursuing a WLAD claim in

20 this case.  *See* ECF No. 1-1 at ¶¶ 5.1-5.7.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 18

[wrongful discharge] based upon the clear public policy contained within the FMLA and WFLA.").  This argument is unavailing.  As discussed above, a plaintiff asserting a wrongful discharge claim must make a threshold showing "that other means of promoting the public policy are inadequate."  *Cudney*, 172 Wash.2d at 530 (internal quotations and citations omitted).  The Washington Supreme Court has repeatedly emphasized that this inquiry must focus on the *collective interest of the public at large* rather than the interests of an individual plaintiff.  *See Cudney*, 172 Wash.2d at 538 ("[W]e must remember that it is the public policy that must be promoted, not [the plaintiff's] individual interests."); *Korslund*, 156 Wash.2d at 183 ("[T]he other means of promoting the public policy *need not be available to the person seeking to bring the tort claim* so long as the other means are adequate to safeguard the public policy.") (emphasis added) (internal quotations and citation omitted).  Accordingly, the fact that Plaintiff lacks a statutory remedy under the WFLA and FMLA is wholly irrelevant.  Given that the WFLA and FMLA adequately protect the collective interest of the public at large, Plaintiff may not pursue a wrongful discharge claim based upon the public policies articulated in these statutes.  *See Cudney*, 172 Wash.2d at 530; *Korslund*, 156 Wash.2d at 182.

### b.  Applicability to Potential WLAD-Based Claim

Plaintiff further asserts that *Roberts* authorizes her to pursue a common law wrongful discharge claim based upon the WLAD's public policy against

pregnancy-related discrimination.  *See* ECF No. 39 at 24 ("[T]he issue before this Court is whether Mrs. Lee was engaging in conduct directly relating to the public policy [that the] WLAD was established to protect.  If so, Mrs. Lee has the right to pursue her [wrongful discharge] claim[.]").  The Court disagrees.  Once again, a plaintiff asserting a wrongful discharge claim must demonstrate that "that other means of promoting the public policy are inadequate."  *Cudney*, 172 Wash.2d at 530 (internal quotations and citations omitted).  To the extent that "current laws and regulations provide an adequate means of promoting the public polic[y]," the plaintiff's wrongful discharge claim is barred.  *Id.*

The crux of Plaintiff's argument is that *Roberts* creates an exception to this rule for wrongful discharge claims that rely upon a public policy identified in the WLAD.  The Court does not read *Roberts* so broadly.  To the extent that *Roberts* creates any exception for WLAD-based wrongful discharge claims, the exception is limited in scope to claims asserted by employees who lack a statutory remedy under the WLAD itself.  In other words, the Court reads *Roberts* to hold that the WLAD is "inadequate" only in the limited sense that it leaves a certain subset of Washington employees unprotected (*i.e.*, those who work for an employer with fewer than eight employees).  Under *Roberts*, these employees—and these employees only—may pursue an alternative common law cause of action for wrongful discharge.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 20

The Court acknowledges that this reading of *Roberts* deviates from the principle that the adequacy of statutory protections must be determined without regard to the interests of an individual plaintiff.  *See Cudney*, 172 Wash.2d at 538; *Korslund*, 156 Wash.2d at 183.  Nevertheless, the Court must somehow reconcile *Roberts* with numerous other Washington Supreme Court cases which hold that a common law wrongful discharge claim is barred to the extent that the public policy at issue is adequately protected by statute.  Rather than adopting an interpretation of *Roberts* which would effectively turn this rule on its head, the Court will construe the case as limited to its facts.  Because the WLAD adequately protects the public policy against pregnancy-related discrimination in the workplace—and because Plaintiff may avail herself of the WLAD's statutory remedies—Plaintiff's wrongful discharge in violation of public policy claim is barred.  Rite Aid's motion for summary judgment on this claim is granted.

//

//

//

//

//

//

//

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 21

1    **ACCORDINGLY, IT IS HEREBY ORDERED:**

2         Defendant's Motion for Summary Judgment on Plaintiffs' Claims for

3    Wrongful Termination (ECF No. 32) is **GRANTED**.  Plaintiff Danielle Lee's

4    claim for wrongful discharge in violation of public policy is **DISMISSED** with

5    prejudice.

6         The District Court Executive is hereby directed to enter this Order and

7    provide copies to counsel.

8         **DATED** this 11th day of January, 2013.

9                        *s/ Thomas O. Rice*

10                       THOMAS O. RICE
                      United States District Judge

11

12

13

14

15

16

17

18

19

20

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ~ 22